AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of One Dell Latitude C600/C500 Laptop Computer, Model No. PP01L, DS/N TW-01F902-12800-1A1-0429

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I    John Marsh    being duly sworn depose and say:

I am a(n)   Investigator with the Office of the United States Attorney for the District of Columbia   and have reason to believe
(Official Title)

that  (name, description and or location)

in the District of Columbia, there is now concealed a certain property, namely One Dell Latitude C600/C500 Laptop Computer, Model No. PP01L, DS/N TW-01F902-12800-1A1-0429
(describe the person or property to be searched)

which contains evidence of a crime, specifically, images of child pornography, and other information as set forth in Attachment B to the attached affidavit
(state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

concerning a violation of Title  18 U.S.C.  United States Code, Section(s) 2252 and 2252A . The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     YES  ☐  NO

John Cummings
Federal Major Crimes

(202)202-514-7561

John Marsh, Investigator
Signature of Affiant

Sworn to before me, and subscribed in my presence

_____            at Washington, D.C.
Date

_____            _____
Name and Title of Judicial Officer            Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

IN RE:   Search Warrant for One Dell          )     Misc. No.
         Latitude Laptop Computer             )
                                              )
                                              )

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1. Your affiant in this matter, Detective John Marsh, has been employed as a Criminal Investigator of the United States Attorney's Office, since September 2003, and have approximately 20 years law enforcement experience including reaching the rank of Detective Sergeant with the United States Park Police. I have experience in vice-related investigations and have participated in over 2000 arrests. I have gained expertise in the conduct of computer-based crime investigations through formal training and on-the-job training with more experienced agents. I have been involved in investigations of violent crime, white collar crime, cyber-crime, including online enticement of minors, and child pornography. I have gained experience conducting such investigations through training and everyday work related to these investigations.

2. Based on my investigative experience, including debriefings with individuals who have enticed minors to engage in sexual activity, and that of other investigators who investigate cases involving sexual exploitation of children, I am aware that individuals who engage in sexual acts with children often watch child pornography for sexual stimulation before they engage in sexual activity with a child, and that for this purpose they maintain collections of child pornography images on their personal computers. Your affiant also knows that cell phones and PDAs are often

synchronized to a user's personal laptop computer resulting in the computer storing address book, contact, and text message information.

3. I am currently assisting in the investigation of the activities of Kenneth Longerbeam. As will be shown below, there is probable cause to believe that Kenneth Longerbeam attempted to entice a minor to engage in illicit sexual conduct in violation of Title 18 United States Code, Section 2422(b). I am submitting this affidavit in support of a search warrant authorizing a search of a laptop computer that was recovered from Kenneth Longerbeam during a search incident to his arrest on December 19, 2007, in the District of Columbia on the charge of attempted enticement of a minor to engage in illicit sexual conduct in violation of Title 18, United States Code, Section 2422(b), and which is currently in the possession of the Metropolitan Police Department in the District of Columbia. The computer is more particularly described in Attachment A hereto. I respectfully request authority to seize, during the course of this search, the items specified in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of the foregoing violations.

4. The statements in this Affidavit are based in part my investigation of this matter and my discussions with other law enforcement agents engaged in investigating federal child exploitation crimes. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of a violation of Title 18, United States Code, Sections 2252 and 2252A are presently located on the laptop computer.

**STATUTORY AUTHORITY**

5. This investigation concerns alleged violations also of Title 18, United States Code, Section 2422(b), attempted enticement of a minor. Title 18 U.S.C. § 2422(b) prohibits a person from using the mail, or any facility of interstate commerce, for the purpose to enticing, persuading or inducing, or attempting to entice, persuade or induce, a person under the age of 18 to engage in any sexual activity for which any person can be prosecuted. As set forth below, there is evidence that Kenneth Longerbeam through the use of an intermediary, attempted to induce a fourteen-old child to engage in sexual intercourse in the District of Columbia. Under District of Columbia law, a person who engages in sexual intercourse with a child under the age of 16, and who is at least four years older than the child, is subject to prosecution for the offense of First Degree Child Sexual Abuse pursuant to Title 22, D.C. Code Section 3008.

6. This investigation also concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors. Title 18 U.S.C. § 2252(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce. Title 18 U.S.C. § 2252A(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign

commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B to this Affidavit:

a. "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

e.      "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

f.      "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.      "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or

data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which preform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

      j.     "Internet Connection" as used herein is a connection required for access to the Internet, the connection would be provided by Cable, DSL (Digital Subscriber Line) or satellite systems.

      k.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

      l.     "Laptop" as used herein is a mobile computer that either has a wireless access card built into it, or can have one added as an external adaptor.

      m.     The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing,

typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

    n. "Wireless network" as used herein means a system of wireless communications in which signals are sent and received via electro magnetic waves such as radio waves. Each person wanting to connect to a wireless network needs a computer which has a wireless network card that operates on the same frequency. Many wired networks base the security of the network on physical access control, trusting all the users on the local network, but if wireless access points are connected to the network, anyone in proximity to the network can connect to it. A wireless access point is equipment that connects to the modem and broadcasts a signal. It is possible for an unknown own user who has a computer with a wireless access card to access an un-encrypted wireless network, and once connected to that network, the user can access any resources available on that network to include other computers or shared Internet connections.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

8.     Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

9.     The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

10.     Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

11.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store tens of thousands of images at very high resolution.

12. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

13. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

14. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

15.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.     Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

b.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

16. To fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU), monitor, keyboard, modem, router, and any other peripherals that were attached to the computer. In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

## SEARCH METHODOLOGY TO BE EMPLOYED

17. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a. examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel

have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

      c.      surveying various file directories and the individual files they contain;

      d.      opening files to determine their contents;

      e.      scanning storage areas;

      f.      performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

      g.      performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## THE INVESTIGATION

18. At approximately 3:36 p.m. on December 18, 2007, within the District of Columbia, a cooperating witness ("CW") sent a text message by telephone to the defendant, KENNETH L. LONGERBEAM, asking "what's up?" The CW sent a second message to the defendant, asking whether the defendant could talk. The defendant, responded by text messaging to the CW's telephone at approximately 6:06 p.m.

19. Over the course of the next approximately 90 minutes, the defendant and the CW exchanged text messages. The CW indicated that he had a boy coming over and that he was going to engage in sex with the child. The defendant asked how old the child was; the CW indicated the child was 14 years old, and in response to the defendant's question whether he was going to "fuck"

the child, the CW indicated that he was going to engage in anal sex with the child. The defendant asked whether the boy was "into 3 ways," meaning whether he the child would engage in group sex. When the CW said the child was, the defendant said "Kool, when can I join?"

20. During the conversation, between the defendant and the CW, which lasted until 7:48 p.m., the defendant, a Metropolitan Police officer, said that he was working that night, and arranged with the CW to come to the CW's residence the following morning. During the conversation, the defendant and the CW discussed in explicit terms the type of sex that they would engage in with the child.

21. At 12:24 a.m on December 19, 2007, the defendant attempted to re-establish contact with the CW by sending a text message to the CW's telephone asking whether the CW was awake. At that time, the telephone was in the custody of a Federal Bureau of Investigation (FBI) agent who did not respond to the message. At 5:05 a.m., the agent responded by text message to the defendant saying he was up and asking whether the defendant was going to come over. The defendant said he was, and asked did you "breed him?" meaning did you ejaculate in the child without a condom. The defendant asked additional questions concerning the sexual acts the child would be willing to perform, including kissing and oral sex. The defendant's date of birth is March 2, 1968. Your affiant knows that it is a violation of 22 D.C. Code 3008 for a person more than four years older than a child under the age of 16 to engage in a sex act with that child and that anal penetration by a penis is a sex act as defined in the District of Columbia Code.

22. At approximately 7:00 a.m. the defendant arrived at the CW's residence in the District of Columbia and began to enter the defendant's residence on foot. At that time, the defendant was placed under arrest by Metropolitan Police officers and FBI agents.

During a search incident to his arrest, officers recovered from the defendant's person lubricant, the defendant's cellular telephone that he had used to send the aforementioned text messages, and the laptop computer that is the subject of this search warrant affidavit.

23. According to the CW, during 2007, the defendant came to the CW's house in order to watch child pornography. The defendant and the CW watched child pornography on the CW's computer while they masturbated.

24. Your affiant also interviewed a witness who is a friend of the defendant. That witness stated that it has seen the defendant watching pornography on the defendant's laptop computer, and that the defendant was "addicted" to watching pornography. The witness stated that it has not seen the defendant watching child pornography on the defendant's laptop computer.

25. Your affiant also spoke with Detective Timothy Palchak who reviewed the defendant's personal page in the "Facebook" social networking website. This website allows individuals to set up a personal page and to interact over the internet with other members of Facebook. An individual's personal page also contains a list of the individual's "friends," as well as pictures of the friends. According to Detective Palchak the defendant's Facebook page contains the profiles and photographs of approximately fifty (50) young men. Based on the photographs of these "friends," as well as information contained in the captions beneath each photograph, it appears that several of these "friends" are high-school-aged children .

## CONCLUSION

26. Based on the aforementioned information, your affiant respectfully submits that there is probable cause to believe that the DEVICE seized incident to the arrest of Kenneth Longerbeam

contains images of child pornography in violation of 18 U.S.C. §§ 2252 and 2252A.

27.   Your affiant therefore respectfully requests that the attached warrant be issued authorizing the search of the laptop described in Attachment A.

_____
JOHN MARSH
CRIMINAL INVESTIGATOR
UNITED STATES ATTORNEY'S OFFICE

Sworn and subscribed before me
this \_\_\_\_\_ day of December 2007.

_____

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## DESCRIPTION OF DEVICES TO BE SEARCHED

Dell Latitude C600/C500 laptop computer;

Model Number PP01L;

DS/N - TW-01F902-12800-1A1-0429.

# ATTACHMENT B

# LIST OF ITEMS TO BE SEIZED

A. Any and all materials or items intended for use in sexual activity with minors as well as any gifts or items relating to the enticement of sexual activity with minors.

B. Any and all materials or items pertaining to the travel in interstate commerce for the purpose of engaging in sexual activities with minors.

C. Records, documents, correspondence (limited to electronic communications), notes, and/or any other materials relating to correspondence or contact between any person and any minor, including but not limited to, electronic mail, chat logs, and electronic messages.

D. Internet billing and use records.

E. Records or other items that evidence ownership or use of computer equipment, limited to sales receipts, registration data, and electronically stored communications.

F. Any and all originals or copies in any variety or format of photographic images exchanged between any persons.

G. Images of child pornography or child erotica and files containing images of such in any form wherever it may be stored or found.

H. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, and that are stored in electronic form.

I. Credit card information stored in electronic form including, but not limited, to bills and payment records.

J. Records in any form showing cell phone backup data, including text messages and contact and address book information.